DEBORAH LaBRIE, Employee, Plaintiff-Appellant
v.
CORNING, INC., Employer,
LUMBERMEN'S MUTUAL CASUALTY COMPANY, Carrier, Defendants-Appellees.
No. COA05-130
North Carolina Court of Appeals
Filed February 21, 2006
This case not for publication
N.C. Industrial Commission I.C. No. 604989.
Law Offices of Matthew B. Slotkin, by Matthew B. Slotkin, for plaintiff-appellant.
Marshall, Williams & Gorham, L.L.P., by Ronald H. Woodruff, for defendants-appellees.
McGEE, Judge.
Deborah LaBrie (plaintiff) began working for Corning, Incorporated (Corning) on 1 February 1982, performing various job duties for Corning during the course of her employment. Plaintiff received two electrical shocks to the right side of her body on 3 January 1996 while cleaning a lathe at Corning. Plaintiff went to the emergency room for treatment on 3 January 1996 and the following day, she saw Corning's plant doctor, Dr. John W. Cromer (Dr. Cromer). Dr. Cromer diagnosed plaintiff as having an electrical injury to her right arm, prescribed medication, and released plaintiff for full time work. Plaintiff was restricted from working in the area where the incident occurred and also was restricted from heavy exertion and overtime work. Dr. Cromer continued to treat plaintiff, and released her for full time work with no restrictions on 23 April 1996. Dr. Cromer referred plaintiff to a number of specialists who did not find any significant abnormalities with plaintiff's right arm. Dr. Cromer released plaintiff from his care in April 1997.
Dr. Cromer again treated plaintiff on 19 February 1999, when plaintiff sought treatment for right arm pain. Dr. Cromer diagnosed plaintiff with right ulnar neuralgia. Dr. Cromer continued to treat plaintiff and diagnosed her with bilateral epicondylitis and bilateral trapezius strain in 2003.
Plaintiff received compensation for her 3 January 1996 injury from Corning and Lumbermen's Mutual Casualty Company (collectively defendants) pursuant to a Form 21 Agreement, which was approved by the Industrial Commission in an order filed 7 October 1996. Under the agreement, plaintiff received compensation for the period from 3 January 1996 through 7 June 1996. More than two years later, plaintiff sought payment of additional compensation. Defendants denied additional compensation to plaintiff on 25 March 1999.
Plaintiff's claim was heard on 29 January 2002 and the record closed on 3 April 2003. Plaintiff claimed, inter alia, she was entitled to benefits for permanent and total disability andadditional compensation from 7 June 1996. A deputy commissioner filed an opinion and award on 31 July 2003, concluding that plaintiff was entitled to (1) temporary partial disability compensation for the period from 3 January 1996 to 28 April 1996, and (2) permanent partial disability compensation as a result of an eight percent (8%) permanent partial impairment to plaintiff's right arm. However, the deputy commissioner also concluded that plaintiff was not entitled to additional benefits after she reached maximum medical improvement because there was insufficient evidence that her electrical injury caused a reduction in her wage-earning capacity. The deputy commissioner further concluded that plaintiff was not entitled to compensation for claims related to her bilateral epicondylitis, trapezius strain, depression and other unrelated health conditions. Plaintiff appealed to the Industrial Commission, which affirmed and modified the opinion and award. Plaintiff appeals.
On appeal of an opinion and award of the Industrial Commission, our Court's role is "limited to reviewing whether any competent evidence supports the Commission's findings of fact and whether the findings of fact support the Commission's conclusions of law." Deese v. Champion Int'l Corp., 352 N.C. 109, 116, 530 S.E.2d 549, 553 (2000). The Industrial Commission is the sole judge of the weight of the evidence, and its findings of fact are conclusive on appeal if they are supported by any competent evidence, even if the evidence would have supported contrary findings. Id. at 115, 530 S.E.2d at 552-53; Adams v. AVX Corp., 349 N.C. 676, 680-81, 509 S.E.2d 411, 413-14 (1998). We do, however, review the Industrial Commission's conclusions of law de novo. Crane v. Berry's Clean-Up & Landscaping, Inc., 169 N.C. App. 323, 327, 610 S.E.2d 464, 466, disc. review denied, 359 N.C. 630, 616 S.E.2d 230 (2005).
Plaintiff assigns error to two findings of fact, arguing the findings are unsupported by the evidence, and to three conclusions of law, arguing the conclusions are not supported by the findings. Plaintiff also assigns error to the Industrial Commission's failure to liberally construe the Workers' Compensation Act in her favor.

I.
Plaintiff argues finding of fact number thirty-eight is not supported by competent evidence. Finding number thirty-eight reads as follows:
On January 29, 2003, Dr. Cromer diagnosed plaintiff with bilateral lateral epicondylitis and bilateral trapezius strain, which were unrelated to the electric shock incident. Dr. Cromer recommended that plaintiff go out of work, pending a psychiatric evaluation due to the extreme stress and anxiety of these complaints. These conditions, if related to her work, do not constitute a change of condition related to the electric shock, but rather are a new injury or occupational disease which occurred while Travelers, which is not a party to this action, was the carrier on the risk.
This finding is supported by Dr. Cromer's testimony. Dr. Cromer testified in a 6 March 2003 deposition that he diagnosed plaintiff's bilateral epicondylitis and bilateral trapezius strain conditions on 29 January 2003. Dr. Cromer also testified these conditions were unrelated to the electrical shock suffered by plaintiff in 1996.
Dr. Ramon B. Jenkins, a neurologist, also examined plaintiff and concluded "there [was] no medical evidence that [plaintiff] sustained permanent partial disability to her right arm or elsewhere from the event of [3 January 1996]." Dr. E. Wayne Massey, a neurologist, concluded "there [was] no long-term damage to [plaintiff's] ulnar nerve that [was] detected by clinical exam or electrically." Accordingly, finding number thirty-eight, that plaintiff's bilateral epicondylitis and bilateral trapezius strain conditions were unrelated to the electrical shock injury, is supported by competent evidence.
Plaintiff also assigns error to finding of fact number forty:
Between the date of the hearing and the close of the record, plaintiff was unable to work for unrelated personal medical reasons. However, [plaintiff] was not under any work restrictions during this time for the compensable electric shock injury. Therefore, any inability to earn wages was not [causally] related to the compensable injury.
The hearing was held on 29 January 2002 and the record closed on 3 April 2003. Dr. Cromer testified in a deposition on 6 March 2003 that plaintiff was under no work restrictions during 2002. Dr. Cromer testified that he did place plaintiff on work restrictions in January 2003, but that the restrictions were for conditions unrelated to plaintiff's original electrical injury. Dr. Cromer subsequently took plaintiff out of work on 26 February 2003 for psychiatric problems unrelated to plaintiff's electrical injury. This evidence supports finding number forty, that plaintiff's inability to earn wages between the hearing and the close of the record was not caused by plaintiff's electrical injury. Because findings thirty-eight and forty are adequately supported, we overrule these assignments of error.

II.
Plaintiff assigns error to the Industrial Commission's conclusion of law number one, which provides that "defendants have successfully rebutted the presumption of continued disability by showing suitable work has been available for plaintiff since Dr. Cromer released her; and she has been performing said work since April 23, 1996." Once an employee proves a disability, there is a presumption that the disability continues until "'the employee returns to work at wages equal to those he was receiving at the time his injury occurred.'" Watson v. Winston-Salem Transit Authority, 92 N.C. App. 473, 476, 374 S.E.2d 483, 485 (1988) (quoting Watkins v. Motor Lines, 279 N.C. 132, 137, 181 S.E.2d 588, 592 (1971)).
The trial court's conclusion that defendants rebutted the presumption of continued disability is supported by finding of fact number five, which is not challenged on appeal. Findings of fact not excepted to are binding on appeal. Creel v. Town of Dover, 126 N.C. App. 547, 552, 486 S.E.2d 478, 480-81 (1997). In finding number five, the Industrial Commission found that "[b]y April 23, 1996, Dr. Cromer released plaintiff with no restrictions to full duty work." The Industrial Commission's conclusion is also supported by finding number forty-five, in which the Industrial Commission found that "any reduction in [plaintiff's] wage earning was not as a result of her compensable injury but due to a combination of her various absences for unrelated causes, as well as due to economic changes in the fiber optic cable industry and the demand for the products from the employer." Accordingly, the Industrial Commission's conclusion of law number one, that defendants successfully rebutted the presumption of continued disability, is adequately supported by the findings.
Plaintiff next assigns error to the Industrial Commission's conclusion of law number two, in which it concluded:
As the result of the compensable injury, plaintiff's wage earning capacity was diminished and she is entitled to temporary partial disability compensation at the rate of two-thirds of the difference between her pre-injury wage and her actual earnings during the period from January 3, 1996 and April 23, 1996. N.C. Gen. Stat. § 97-30. Defendants are entitled to a credit for any disability compensation already paid to plaintiff for this period. Plaintiff is not entitled to additional benefits after April 23, 1996, as there is insufficient evidence to support a finding that any reduction in her wage earning capacity was due to the electric shock injury.
The first sentence of conclusion of law two is supported by findings two through five, which are not challenged. The Industrial Commission found that plaintiff experienced two electric shocks to her right side on 3 January 1996 and that Dr. Cromer authorized plaintiff to continue working full duty. However, the Industrial Commission recognized that plaintiff was restricted to no overtime work. The Industrial Commission also recognized that plaintiff was restricted from working in the area where the incident occurred and was restricted from tasks that posed a risk of electrical shock due to plaintiff's anxiety. The Industrial Commission found that Dr. Cromer released plaintiff for full time work with no restrictions on 23 April 1996. Plaintiff was entitled to disability compensation for her partial work restrictions.
The second sentence of conclusion of law two is supported by finding number seven, that defendants paid temporary total disability benefits to plaintiff pursuant to a Form 21 Agreement. Because defendants previously paid benefits to plaintiff, defendants are entitled to a credit in the amount already paid.
Finally, the Industrial Commission's conclusion that plaintiff is not entitled to additional benefits after 23 April 1996 is supported by findings 12, 15, 38, 39, 40, and 45. The Industrial Commission's findings establish that there was insufficient evidence to show that any of plaintiff's medical conditions and resulting work restrictions after 23 April 1996 were related to the electrical shock injury. Rather, the evidence showed that plaintiff's medical conditions since 23 April 1996 were either unrelated to her original compensable injury or were entirely unrelated to work. Accordingly, conclusion of law two is adequately supported by the findings of fact.
Plaintiff further assigns error to the Industrial Commission's conclusion of law number four. Conclusion number four provides:
Plaintiff is entitled to have defendants pay for medical expenses incurred as a result of the compensable injury as may be required to provide relief, effect a cure or lessen the period of disability for the electric shock injury. N.C. Gen. Stat. §§ 97-2(19);-25. The authorized medical treatment includes care rendered by Dr. Cromer and he is approved as [plaintiff's] treating physician. Plaintiff is not entitled to have defendants provide treatment under this claim for her bilateral epicondylitis or trapezius strain. [Plaintiff] is likewise not entitled to have defendants provide treatment for her unrelated depression or other unrelated health conditions.
The North Carolina Workers' Compensation Act provides that "[m]edical compensation shall be provided by the employer." N.C. Gen. Stat. § 97-25 (2005). The Workers' Compensation Act further defines medical compensation as
medical, surgical, hospital, nursing, and rehabilitative services, and medicines, sick travel, and other treatment, including medical and surgical supplies, as may reasonably be required to effect a cure or give relief and for such additional time as, in the judgment of the Commission, will tend to lessen the period of disability[.]
N.C. Gen. Stat. § 97-2(19) (2005). Pursuant to the Act, an employer must pay future medical expenses of an injured employee "when the treatment lessens the period of disability, effects a cure or gives relief." Parsons v. Pantry, Inc., 126 N.C. App. 540, 541-42, 485 S.E.2d 867, 869 (1997). However, such future expenses must be directly related to the original compensable injury. Id. at 542, 485 S.E.2d at 869.
The Industrial Commission found in finding number thirty-eight that plaintiff's bilateral epicondylitis and bilateral trapezius strain conditions "do not constitute a change of condition related to the electric shock, but rather are . . . new injur[ies] or occupational disease[s] which occurred while Travelers, which is not a party to this action, was the carrier on the risk." Therefore, plaintiff is not entitled to have defendants provide treatment for these conditions under this claim.
Findings 18, 19, 20, 24 and 26 also support the Industrial Commission's conclusion that plaintiff's depression was unrelated to plaintiff's original electrical injury. These findings establish that plaintiff's depression and resulting work restrictions were caused by personal problems unrelated to her work at Corning. Therefore, conclusion of law number four is adequately supported by the findings. Because the challenged conclusions of law are adequately supported, we overrule these assignments of error.

III.
Plaintiff also assigns error to the Industrial Commission's failure to liberally construe the Workers' Compensation Act in her favor. The Workers' Compensation Act should be construed liberally so as to effectuate its purpose of providing compensation for injured workers. Hollman v. City of Raleigh, 273 N.C. 240, 252, 159 S.E.2d 874, 882 (1968). However, "`the courts cannot judicially expand the employer's liability beyond the statutory parameters.'" Bondurant v. Estes Express Lines, Inc., 167 N.C. App. 259, 265, 606 S.E.2d 345, 349 (2004) (quoting Hendrix v. Linn-Corriher Corp., 317 N.C. 179, 190, 345 S.E.2d 374, 381 (1986)). Because plaintiff is not entitled to compensation for medical conditions which are unrelated to her original electrical shock injury, the Industrial Commission did not err by denying plaintiff's claims for additional compensation. Accordingly, weoverrule this assignment of error.
Affirmed.
Chief Judge MARTIN and Judge ELMORE concur.
Report per Rule 30(e).