MARY NICOLE BOONE VOGLER, Widow; MARILYN "SUE ANN" CLYMER, Guardian Ad Litem for KRISTIN DAKOTA VOGLER, Minor Child; and MARK BOONE, Guardian Ad Litem for MEGAN NICOLE BOONE, Minor Stepchild; of BILLY CHARLES VOGLER, Deceased Employee, Plaintiffs v. BRANCH ERECTIONS CO., INC., Employer-Defendant; RELIANCE NATIONAL INSURANCE COMPANY (now insolvent), Carrier-Defendant; NORTH CAROLINA INSURANCE GUARANTY ASSOCIATION, Defendant; CAMBRIDGE INTEGRATED SERV., Third-Party Administrator; STERLING ADMINISTRATIVE SERVICES and the GOFF GROUP, Servicing Agents

No. COA06-288

(Filed 6 February 2007)

## 1. Workers' Compensation— additional compensation for safety violations—statutory and policy language

The North Carolina Insurance Guaranty Association was obligated to pay an additional 10% on a workers' compensation claim where N.C.G.S. § 97-12 allowed the increase when a health or safety violation occurred, the policy which NCIGA assumed when the issuing company was declared insolvent provided that the insurer would pay the benefits required by the workers' compensation law, and the policy also included language that provided coverage for an insured's intentional failure to comply with a health and safety statute.

## 2. Workers' Compensation— additional compensation for willful safety violations—liability of employer

The Industrial Commission did not err by concluding that the North Carolina Insurance Guaranty Association was entitled under the plain language of a workers' compensation policy to seek reimbursement from the employer (Branch) of a 10% addition to plaintiff's compensation imposed for willful violations of OSHA regulations and paid by NCIGA.

Judge Tyson dissenting.

Appeals by defendants from an Opinion and Award entered 27 July 2005 by the Industrial Commission. Heard in the Court of Appeals 20 September 2006.

*J. Randolph Ward for defendant-appellant/cross-appellee Branch Erections, Co., Inc.*

*Nelson, Mullins, Riley & Scarborough, LLP, by Christopher Blake, for defendant-appellee/cross-appellant North Carolina Insurance Guaranty Association.*

BRYANT, Judge.

The North Carolina Insurance Guaranty Association (NCIGA) (defendant-appellee/cross-appellant) and Branch Erections, Co., Inc. (Branch) (defendant-appellant/cross-appellee) appeal from an Opinion and Award entered 27 July 2005 by the North Carolina Industrial Commission (Commission).

On 23 March 2000, Billy Charles Vogler (plaintiff-decedent) suffered a compensable workplace injury by accident when he fell twenty feet to the ground after being struck by a crane. Plaintiff died as a result of the injuries sustained in the accident. In *Vogler I*, the Opinion and Award of the Full Commission granting plaintiff 10% additional compensation was reversed and remanded by this Court which held the Commission "abused its discretion by declining to receive the policy as evidence and by failing to take into account the terms of the [insurance] policy [between Branch and Reliance[1]]." *Vogler v. Branch Erections Co.*, 166 N.C. App. 169, 177, 601 S.E.2d 273, 278 (2004) (*Vogler I*).

The present case is before this Court on appeal by both parties from the Commission's 27 July 2005 Opinion and Award which concluded: (1) the insurance policy between Branch and Reliance National Insurance Company provides for NCIGA to pay plaintiff the 10% increase in compensation awarded pursuant to N.C. Gen. Stat. § 97-12; and (2) NCIGA could seek reimbursement from Branch. Both defendants appeal.

NCIGA argues the Commission erred in determining NCIGA was obligated to pay the 10% additional workers' compensation awarded to plaintiff. Branch argues the Commission erred in holding that NCIGA is entitled to seek reimbursement from Branch for the 10% additional compensation awarded to plaintiff.

---

1. On 3 October 2001, Reliance "was declared insolvent in an order of liquidation" and the North Carolina Insurance Guaranty Association (NCIGA) assumed its statutory obligations in connection with this claim.

**VOGLER v. BRANCH ERECTIONS CO.**

[181 N.C. App. 457 (2007)]

Opinions and awards of the Commission are reviewed to determine whether competent evidence exists to support the Commission's findings of fact, and whether the findings of fact support the Commission's conclusions of law. *Bondurant v. Estes Express Lines, Inc.*, 167 N.C. App. 259, 263, 606 S.E.2d 345, 348 (2004) (quotations and citations omitted). If supported by competent evidence, the Commission's findings are binding on appeal even when there exists evidence to support findings to the contrary. *Allen v. Roberts Elec. Contrs.*, 143 N.C. App. 55, 60, 546 S.E.2d 133, 137 (2001). The Commission's conclusions of law are reviewed *de novo*. *Id.* at 63, 546 S.E.2d at 139. For the reasons stated herein, we affirm the decision of the Commission.

## NCIGA Appeal

[1] On appeal NCIGA argues the Commission erred in determining NCIGA was obligated to pay the additional 10% awarded to plaintiff. Specifically, NCIGA challenges the Commission's finding that the additional 10% increase to plaintiff's workers' compensation award was a "covered claim." In the alternative, NCIGA contends it should not be required to pay the additional compensation, asserting it constitutes "punitive and exemplary damages."

The purpose of the North Carolina Insurance Guaranty Association Act (Guaranty Act), N.C. Gen. Stat. § 58-48-1 *et seq.* is:

to provide a mechanism for the payment of *covered claims* under certain insurance policies, to avoid excessive delay in payment, and *to avoid financial loss to claimants or policyholders because of the insolvency of an insurer*, to assist in the detection and prevention of insurer insolvencies, and to provide an association to assess the cost of such protection among insurers.

N.C. Gen. Stat. § 58-48-5 (2005) (emphasis added). All liability insurance companies licensed to conduct business in North Carolina are members of NCIGA. *See* N.C. Gen. Stat. § 58-48-25 (2005). When a member insurer becomes insolvent, NCIGA assumes responsibility for defending and paying covered claims against the insolvent company. NCIGA has a statutory liability limit of $300,000.00. *See* N.C. Gen. Stat. § 58-48-35 (2005). Furthermore, North Carolina General Statutes, Section 97-98 provides:

No policy of insurance against liability arising under this Article shall be issued unless it contains the agreement of the insurer

that it will promptly pay to the person entitled to same all benefits conferred by this Article . . . .

N.C. Gen. Stat. § 97-98 (2005).

In the present case, NCIGA challenges the following findings of the Commission:

11. [] The policy specifically requires the employer to be responsible for any payment in excess of the benefits regularly provided by the Workers' Compensation Act, including those imposed due to the employer's failure to comply with a health or safety law or regulation.

12. When an insurer becomes insolvent, the Guaranty Act . . . requires that NCIGA:

(1) Be obligated to the extent of the covered claims . . . [and]

. (2) Be deemed the insurer to the extent of [NCIGA's] obligation on the covered claims . . . as if the insurer had not become insolvent. N.C. Gen. Stat. § 58-48-35(a)(1) and (2) (2003).

13. [] NCIGA is obligated [pursuant to the statutory definition of a covered claim] to pay claims only to the extent of a covered claim, which does not include any amount in excess of what the insolvent insurer would be required to pay.

14. The insurance policy between defendant-employer and Reliance provides in Part One, Section F, as follows:

F. Payments You [employer] Must Make You [employer] are responsible for any payments in excess of the benefits regularly provided by the workers' compensation law including those required because:

1. Of your serious and willful misconduct;

. . .

3. You fail to comply with a health or safety law or regulation;

15. Based upon the clear language of the insurance policy between defendant-employer and Reliance, and therefore NCIGA as the successor to Reliance, the Commission finds that the pol-

**VOGLER v. BRANCH ERECTIONS CO.**

[181 N.C. App. 457 (2007)]

icy provides for payment by the carrier of any 10% increase in compensation awarded pursuant to N.C. Gen. Stat. § 97-12 and for the carrier to then seek reimbursement by defendant-employer.

NCIGA challenges the Commission's conclusions:

8. [B]ased upon a clear reading of [N.C. Gen. Stat. § 97-12], the 10% additional compensation awarded . . . is *compensation* and does not constitute exemplary or punitive damages.

9. Therefore, the additional compensation is part of a covered claim and must be paid by NCIGA, but is subject to reimbursement by defendant-employer, pursuant to the terms of the workers' compensation policy.

(Emphasis in original).

NCIGA argues the Commission erred in finding plaintiff's claim met the definition of a "covered claim" as defined by N.C. Gen. Stat. § 58-48-20. A "covered claim" is:

an unpaid claim, including one of unearned premiums, which is in excess of fifty dollars ($50.00) and arises out of and is within the coverage and not in excess of the applicable limits of an insurance policy to which this Article applies as issued by an insurer, if such insurer becomes an insolvent insurer . . . .

N.C. Gen. Stat. § 58-48-20(4) (2005); *See Bowles v. BCJ Trucking Servs.*, 172 N.C. App. 149, 153, 615 S.E.2d 724, 727 (2005); *and Hales v. North Carolina Ins. Guar. Ass'n*, 337 N.C. 329, 343, 445 S.E.2d 590, 599 (1994).

The Branch-Reliance insurance policy provided that the insurer "will pay promptly when due the benefits required of [Branch] by the workers' compensation law." The policy also states "terms of this insurance that conflict with the workers' compensation law are changed by this statement to conform to that law." Plaintiff's workers' compensation claim, as a result of Branches' conduct, arose out of and was within the provisions contemplated by the "Workers' Compensation and Employers' Liability Insurance Policy."[2] When Reliance became insolvent, NCIGA became liable to compensate plaintiff under the terms of the Branch-Reliance insurance policy. This is clearly a covered claim as contemplated by N.C.G.S. § 58-48-20 such that NCIGA was required to compensate plaintiff

---

2. Paragraph A of the policy states "[t]his workers' compensation insurance applies to bodily injury by accident [which] includes death."

VOGLER v. BRANCH ERECTIONS CO.

[181 N.C. App. 457 (2007)]

(claimant) in order "to avoid financial loss to claimants or policy-holders because of the insolvency of an insurer." N.C.G.S. § 58-48-5 (2005). The N.C. Workers' Compensation Act states "[w]hen the injury or death is caused by the willful failure of the employer to comply with any statutory requirement or any lawful order of the Commission, compensation shall be increased ten percent (10%)." N.C. Gen. Stat. § 97-12 (2005). See Felmet v. Duke Power Co., 131 N.C. App. 87, 504 S.E.2d 815 (1998) (legislature intended timely recovery for workers' compensation claimants); see also Cabe v. Parker-Graham-Sexton, Inc., 202 N.C. 176, 162 S.E. 223 (1932) (holding insurer obligated to pay for employer's wrongdoing in order "to grant certain and speedy relief to injured employees or . . . their dependents"). It is well-settled that, where "the language of the statute is clear and is not ambiguous, we must conclude that the legislature intended the statute to be implemented according to the plain meaning of its terms." Hyler v. GTE Prods. Co., 333 N.C. 258, 262, 425 S.E.2d 698, 701 (1993).

In the instant case, the Commission reviewed the Branch-Reliance insurance policy and made specific findings of fact, including the finding that the clear language of the insurance "policy provides for payment . . . of any 10% increase in compensation awarded pursuant to N.C. Gen. Stat. § 97-12. . . ." Those findings of fact, based on competent evidence in the record, support the Commission's conclusions of law that the additional compensation is a part of a covered claim to be paid by NCIGA. This assignment of error is overruled.

NCIGA argues in the alternative that the Commission erred in finding it was obligated to pay the additional 10% compensation because such payment constituted "punitive and exemplary damages." We are unpersuaded by NCIGA's alternative argument.

Resolution of this issue revolves around the language used in "Section F" of the Branch-Reliance insurance policy which excludes coverage for an insured's intentional failure to comply with a health or safety statute, and whether that language overrides the statutory requirements of section 97-12 which allows for a 10% increase in compensation when such a violation occurs. This appears to be an issue of first impression in the appellate courts of North Carolina. However, there is strong persuasive authority from the Kentucky courts which have examined this precise issue. In a case involving the identical language used in "Section F" of the Branch-Reliance insur-

VOGLER v. BRANCH ERECTIONS CO.

[181 N.C. App. 457 (2007)]

ance policy[3] and a statute analogous to N.C. Gen. Stat. § 97-12, the Kentucky court held:

> There is no indication that the 15% increase in compensation required by KRS 342.165(1)[4] was intended to fall outside the framework of workers' compensation benefits. Even if the [insurance] contract did apply, we do not believe the 15% increase in compensation could be considered in "excess" of workers' compensation benefits, as provided in [Section F. of] the [] contract.

*AIG/AIU Ins. Co. v. S. Akers Mining Co.*, 2004 Ky. App. LEXIS 338, —— S.W.3d ——, (Ky. Ct. App. 2004). In affirming the lower court, the Kentucky Supreme Court made clear that the Kentucky statute, similar to N.C. Gen. Stat. § 97-12, "authorizes an increase or decrease in compensation if an 'intentional failure' to comply with the safety regulation []contributes to causing an accident, implying only that the increase or decrease serves to compensate the party that benefits from it for the effects of the opponent's misconduct." *AIG/AIU Ins. Co. v. S. Akers Mining Co.*, 192 S.W.3d 687, 689, 2006 Ky. LEXIS 8, —— S.W.3d —— (Ky. Jan. 19, 2006). The Kentucky Supreme Court held that "the employer's insurance carrier is liable for any increase in benefits under KRS 342.165(1) despite a contractual term to the contrary." *Id.* The court went on to acknowledge that the consequence of the 15% increase under the Kentucky statute may appear to penalize the employer or the carrier, but that, unlike other statutes where punitive damages are explicitly mentioned, the statute at issue did not explicitly mention punitive damages, only an increase in compensation.

---

3. In pertinent part, this language is taken from the "Part One Workers' Compensation" portion of the standard contract issued by the National Council on Compensation Insurance and approved for use in all states, except Michigan:

F. Payments You [employer] Must Make

You [employer] are responsible for any payments in excess of the benefits regularly provided by the workers' compensation law including those required because:

1. Of your serious and willful misconduct;

. . .

3. You fail to comply with a health or safety law or regulation;

4. The referenced Kentucky statute states:

If an accident is caused in any degree by the intentional failure of the employer to comply with any specific statute or lawful administrative regulation made thereunder, communicated to the employer and relative to installation or maintenance of safety appliances or methods, the *compensation for which the*

We are strongly persuaded by the reasoning of the Kentucky courts as N.C. Gen. Stat. § 97-12 is very similar to the Kentucky statute and the provision in "Section F" of the Branch-Reliance contract is the same as the provision in the Kentucky contract. While the effect of the 10% increase may appear to penalize NCIGA, § 97-12 does not explicitly mention punitive damages, but in fact says "compensation shall be increased ten percent." The language of the insurance policy does not preclude NCIGA's liability for the increase. NCIGA is obligated to pay the additional 10% compensation. This assignment of error is overruled.

### Branch Appeal

[2] Branch claims the Commission erred in holding that NCIGA is entitled to seek reimbursement from Branch for the 10% additional compensation awarded to plaintiff for Branches' willful violations of OSHA regulations under North Carolina statute and the terms of the Branch-Reliance policy. Where there is no ambiguity in a policy's language, the courts must apply the plain meaning of the policy language and enforce the policy as written. *Wachovia Bank & Tr. Co. v. Westchester Fire Ins. Co.*, 276 N.C. 348, 354, 172 S.E.2d 518, 522 (1970).

Based on the specific findings and conclusions of the Commission, the policy expressly included the right to seek reimbursement if the insurer had to pay amounts "in excess of the benefits regularly provided by the workers' compensation law including those required because: [] you fail to comply with a health or safety law or regulation." Branch has received the benefits of the insurance policy as NCIGA has paid the workers' compensation benefits to date, exclusive of the additional 10% compensation. Thus, according to the plain language of the policy the Commission correctly concluded that the "additional 10% amount is subject to reimbursement by [Branch], as provided by the insurance policy," where Branch has been found to have wilfully violated the OSHA regulations and must therefore reimburse NCIGA for any compensation attributed to such conduct. This assignment of error is overruled.

Affirmed.

Judge LEVINSON concurs.

---

employer would otherwise have been liable under this chapter shall be increased thirty percent (30%) in the amount of each payment. . . .

KRS 342.165(1) (2005) (emphasis added).

Judge TYSON dissents in a separate opinion.

TYSON, Judge, dissenting.

The majority's opinion affirms the decision of the Commission and concludes: (1) "the additional compensation [under N.C. Gen. Stat. § 97-12] is a part of a covered claim to be paid by NCIGA;" (2) "the additional 10% compensation . . . [does not] constitute[] "punitive and exemplary damages;" and (3) "where Branch has been found to have wilfully violated the OSHA regulations [they] must therefore reimburse NCIGA for any compensation attributed to such conduct."

The insurance contract between Branch and Reliance provides Branch is to be responsible for "payments in excess of the benefits regularly provided by the workers' compensation law including those required [if]: 3. [Branch] fail[s] to comply with a health or safety law or regulation." Uncontested findings of fact show Branch's failure to comply with twenty OSHA regulations proximately caused decedent's death. Branch, not the Guaranty Association, is responsible for the additional ten percent compensation provided under N.C. Gen. Stat. § 97-12. I respectfully dissent.

## I. Construction of Insurance Contracts

"[A]n insurance policy is a contract and its provisions govern the rights and duties of the parties thereto." *Gaston County Dyeing Machine Co. v. Northfield Ins. Co.*, 351 N.C. 293, 299, 524 S.E.2d 558, 563 (2000); *see also Allstate Ins. Co. v. Chatterton*, 135 N.C. App. 92, 94, 518 S.E.2d 814, 816 (1999) ("The interpretation of language used in an insurance policy is a question of law, governed by well-established rules of construction."), *disc. rev. denied*, 351 N.C. 350, 542 S.E.2d 205 (2000). The language in the policy is to be construed as written "without rewriting the contract or disregarding the express language used." *Fidelity Bankers Life Ins. Co. v. Dortch*, 318 N.C. 378, 380, 348 S.E.2d 794, 796 (1986). "[T]he goal of construction is to arrive at the intent of the parties when the policy was issued." *Woods v. Insurance Co.*, 295 N.C. 500, 505, 246 S.E.2d 773, 777 (1978).

Where "the language of a contract is plain and unambiguous, the construction of the agreement is a matter of law for the court." *W. S. Clark & Sons, Inc. v. Ruiz*, 87 N.C. App. 420, 421, 360 S.E.2d 814, 816 (1987). "The Commission's conclusions of law are reviewable *de novo.*" *Arnold v. Wal-Mart Stores, Inc.*, 154 N.C. App. 482, 484, 571 S.E.2d 888, 891 (2002).

**VOGLER v. BRANCH ERECTIONS CO.**

[181 N.C. App. 457 (2007)]

In *Bowles v. BCJ Trucking Servs., Inc.*, this Court held the Guaranty Association "stepped into the shoes of the insurance company found to be insolvent and is deemed the insurer having 'all rights, duties, and *obligations* of the insolvent insurer as if the insurer had not become insolvent.'" 172 N.C. App. 149, 155, 615 S.E.2d 724, 728 (emphasis original) (quoting N.C. Gen. Stat. § 58-48-35(a)(2)), *disc. rev. denied*, 360 N.C. 60, 623 S.E.2d 579 (2005).

The Guaranty Association can assert all rights and defenses Reliance could have asserted under the insurance contract. "The agreement did not create a new contract for insurance coverage but solely substituted a new party[.]" *Id.* In *Bowles*, the insurance company substituted the employer in the workers' compensation insurance contract. 172 N.C. App. at 155, 615 S.E.2d at 728.

The Guaranty Association's liability is limited by statute. Under N.C. Gen. Stat. § 58-48-25(a)(1)-(2) (2005), the Guaranty Association shall:

(1) Be obligated to the extent of the covered claims existing prior to the determination of insolvency and arising within 30 days after the determination of insolvency, or before the policy expiration date if less than 30 days after the determination, or before the insured replaces the policy or causes its cancellation, if he does so within 30 days of the determination. This obligation includes only the amount of each covered claim that is in excess of fifty dollars ($50.00) and is less than three hundred thousand dollars ($300,000.00) . . . .

(2) Be deemed the insurer to the extent of the Association's obligation on the covered claims and to such extent shall have all rights, duties, and obligations of the insolvent insurer as if the insurer had not become insolvent.

A "covered claim" means:

(4) [A]n unpaid claim, including one of unearned premiums, which is in excess of fifty dollars ($50.00) and arises out of and is within the coverage and not in excess of the applicable limits of an insurance policy to which this Article applies as issued by an insurer, if such insurer becomes an insolvent insurer after the effective date of this Article and (i) the claimant or insured is a resident of this State at the time of the insured event; or (ii) the property from which the claim arises is permanently located in this State.

N.C. Gen. Stat. § 58-48-20(4) (2005).

It is uncontested that Branch and Reliance entered into an insurance contract which states:

B. [Reliance will pay]—[Reliance] will pay promptly when due the benefits required of you by the workers' compensation law.

. . . .

F. Payments [Branch] Must Make—*[Branch is] responsible for any payments* in excess of the benefits regularly provided by the workers' compensation law including those required because:

1. *of [Branch's] serious and willful misconduct*;

. . . .

3. *[Branch] fail[s] to comply with a health or safety law or regulation*; or

. . . .

If [Reliance] makes any payments in excess of the benefits regularly provided by the workers' compensation law on [Branch's] behalf, [Branch] will reimburse [Reliance] promptly.

(Emphasis supplied). The Commission entered the following uncontested and binding findings of fact:

6. . . .[on] October 3, 2001, Reliance was declared insolvent in an order of liquidation entered in Pennsylvania. Following the insolvency of Reliance, the North Carolina Insurance Guaranty Association ("NCIGA") assumed its statutory obligations in connection with this claim pursuant to the Insurance Guaranty Association Act ("Guaranty Act").

. . . .

1. On March 23, 2000, decedent suffered a compensable injury by accident while in the course and scope of his employment with defendant-employer when a crane broke loose from its platform and fell, striking decedent and causing him to fall 20 feet to the ground. As a direct result of said injury by accident, decedent was killed.

. . . .

3. OSHA performed an investigation of decedent's March 23, 2000 death by accident and cited defendant-employer for 20 violations of OSHA regulations, all characterized as "serious." The

OSHA investigator was of the opinion and the Commission finds that the violations were the proximate cause of decedent's death.

4. The OSHA report indicated that defendant-employer's records showed a failure to inspect the crane turret bolts for two years prior to this incident, even though OSHA regulations require a daily inspection of the same when in use. Decedent's death was caused by the crane falling on him as he was working on a section of a communications tower erected 18 feet above ground.

5. The OSHA inspector found that the failure to have the crane and other equipment inspected resulted in defendant-employer's failure to discover worn, cracked, and rusty bolts on the turret which caused the crane to fall on decedent. The inspector further stated: "According to the crane operator he heard a snap, then the crane boom started to fall, striking the employee [decedent] on the top leg of the tower section. The csho [Safety/Health Compliance Officer] observed that the bolts holding the upper and lower portions of the turret had sheared off. Upon closer examination many bolts showed signs of rust, indicative of cracks. Turret bolts could also be turned by hand, and the csho removed twenty two bolts using no tools. Maintenance records for the crane indicated that in the last two years the crane had not been inspected. Crane operators were not trained. Operators did not inspect the crane prior to, and during use. Severity is high due to death from crushing. Probability is also high due to the continuous use of the crane. NOTE: VIOLATION WAS PROXIMATE CAUSE OF ACCIDENT."

. . . .

8. The OSHA inspection revealed and the Commission finds that defendant-employer knew or should have been aware of the safety hazards that existed at the job site because the violations were in plain view. Defendant-employer failed to conduct inspections of the crane, rigging equipment, fall protection and general worksite conditions, which resulted in the fatality on March 23, 2000.

See State v. Watkins, 337 N.C. 437, 438, 446 S.E.2d 67, 68 (1994) (findings of fact which are not excepted to are binding on appeal).

Branch and Reliance contracted and agreed that Branch would be responsible for "any payments . . . required because 1. [Branch's] serious and wilful misconduct . . . [or] 3. [Branch's] fail[ure] to com-

ply with a health or safety law or regulation." The Commission's uncontested findings of fact show Branch's twenty OSHA regulation violations proximately caused decedent's death. The Commission properly concluded decedent is entitled to an additional 10% compensation because of Branch's willful failure to comply with OSHA regulations. N.C. Gen. Stat. § 97-12.

Under the contract, Branch, as employer, is responsible for payments in excess of benefits regularly provided by the workers' compensation law. The Commission erred when it concluded the "additional compensation is part of a covered claim and must be paid by NCIGA."

## II. Conclusion

The contract between Branch and Reliance plainly and unambiguously states Branch is to be responsible for excess payments because of Branch's "serious and wilful conduct" and "fail[ure] to comply with a health or safety law or regulation." Branch is solely responsible for the additional ten percent compensation allowed under N.C. Gen. Stat. § 97-12.

The Commission erred when it concluded "the additional compensation [provided in N.C. Gen. Stat. § 97-12] is part of a covered claim and must be paid by NCIGA." I vote to reverse the Commission's order. I respectfully dissent.