DAVID A. BONDURANT, Employee, Plaintiff v. ESTES EXPRESS LINES, INC., Employer, SELF-INSURED, Defendant

No. COA04-244

(Filed 7 December 2004)

## 1. Workers' Compensation— hernias—not a continuation of earlier, repaired injury

In a workers' compensation case involving multiple hernias, some suffered after plaintiff left defendant's employ, competent evidence supported findings by the Industrial Commission that plaintiff had healed and did not have a hernia after an earlier repair (so that the subsequent hernias were new injuries rather than a continuation of the earlier injuries, which were admittedly compensable).

## 2. Workers' Compensation— subsequent hernias—compensability—standard

The Industrial Commission used the correct standard in determining that plaintiff's subsequent hernias, suffered after leaving defendant's employ, were not compensable as natural and direct results of his earlier compensable hernias. There was medical testimony that a person will not necessarily have another hernia following a repair and plaintiff cannot therefore show that the subsequent hernias were the natural and direct result of the earlier hernias.

**BONDURANT v. ESTES EXPRESS LINES, INC.**

[167 N.C. App. 259 (2004)]

Appeal by plaintiff from opinion and award filed 1 October 2003 by the North Carolina Industrial Commission. Heard in the Court of Appeals 14 October 2004.

*Joseph V. Dipierro for plaintiff-appellant.*

*Cranfill, Sumner & Hartzog, L.L.P., by James B. Black, IV, for defendant-appellee.*

BRYANT, Judge.

David Bondurant (plaintiff) appeals a decision of the Industrial Commission filed 1 October 2003, denying compensability for three hernias.

*Procedural History*

Plaintiff sustained a compensable hernia in the course and scope of his employment with defendant on 15 May 1995. This claim was accepted as compensable by Form 21. This hernia was repaired and plaintiff returned to work with defendant.

Plaintiff sustained another hernia on 30 August 1996. Defendant denied this claim by Form 61. A hearing was held before a deputy commissioner on 28 April 1999. By opinion and award filed on 30 June 2000, the deputy commissioner concluded the hernia was compensable as plaintiff "sustained an umbilical hernia as a result of a specific traumatic incident of his assigned work." Neither party appealed the award.

On 3 August 2001, plaintiff filed a Form 18M seeking compensation for a third hernia. The executive secretary of the Industrial Commission denied plaintiff's Form 18M by administrative order dated 11 October 2001. Plaintiff subsequently filed a Form 33 request for hearing, and defendant responded with a Form 33R denying liability.

This matter came for hearing before a deputy commissioner on 22 March 2002. By opinion and award filed 6 December 2002, the deputy commissioner found that plaintiff suffered at least three subsequent hernias in 1999, 2000, and 2001, all of which were a direct and natural result of plaintiff's earlier compensable hernias. Defendant appealed to the Full Commission.

This matter came for hearing before the Full Commission on 10 July 2003. By opinion and award filed 1 October 2003, the Full Commission reversed the opinion and award of the deputy commis-

sioner, concluding that plaintiff's three subsequent hernias were not compensable. Plaintiff filed timely notice of appeal with this Court on 30 October 2003.

*Facts*

Plaintiff was 53 years of age, having completed his GED and a trucking course, at the time of the 22 March 2002 hearing before the deputy commissioner. Plaintiff became employed with defendant in 1992 and remained in its employ through February 1998. Prior to his employment with defendant, plaintiff had not sustained any hernias. On the date of the deputy commissioner hearing, he was employed as a truck driver for a company in Virginia. It is undisputed that plaintiff voluntarily ceased employment with defendant.

Plaintiff's first compensable hernia occurred on or about 15 May 1995, and was surgically repaired by Dr. Stuart Harris on 9 June 1995 in Lynchburg, Virginia. This injury was accepted as compensable on a Form 21 on 11 January 1996. The second hernia occurred on 30 August 1996, and was repaired by Dr. David Hill on 17 February 1998, in Lynchburg, Virginia. This injury was found compensable pursuant to N.C. Gen. Stat. § 97-2(18), as a "new" hernia by opinion and award filed 30 June 2000.

Both of the two compensable hernias were umbilical, meaning that these hernias were located at the navel. Drs. Harris and Hill characterized the second hernia as a recurrence of the first compensable hernia.

In May 1999, plaintiff went to work with DMR Builders, a home-building business. Sometime in the summer of 1999, plaintiff suffered a third hernia. There was no known incident giving rise to the third hernia. Plaintiff continued working with DMR Builders after sustaining the hernia.

Plaintiff sought treatment from Dr. T. Scott Garrett—located in Lynchburg, Virginia—who performed a ventral herniorrhaphy on 20 December 1999. Dr. Garrett opined that this was a recurrent ventral incisional hernia in the same area as the previous two hernias. Plaintiff returned for a followup appointment on 17 January 2000, and Dr. Garrett determined that plaintiff no longer had a hernia.

Plaintiff was released to work without restrictions on 12 February 2000. He next worked for three months in Virginia, building and packing telephones on an assembly line, and five-and-

a-half months loading and driving trucks for a temporary agency in Virginia.

In the summer of 2000, plaintiff—who was on holiday break—was standing in the ocean when he was struck by a wave and immediately felt a burning in his stomach. Thereafter, plaintiff continued working until such time as he was laid off and began collecting unemployment benefits. Plaintiff returned to Dr. Garrett on 30 January 2001 complaining of another hernia. Dr. Garrett performed another ventral herniorrhaphy on 28 February 2001, this time with a non-absorbable mesh. Dr. Garrett again noted that the hernia was in the same area as plaintiff's two compensable hernias. Upon plaintiff's follow-up examination on 19 March 2001, Dr. Garrett determined that plaintiff was doing well and no longer had a hernia. Plaintiff's healing process was slightly complicated by an infection at the incision site, but nevertheless, he was released to return to work without restrictions as of 12 April 2001.

In the summer of 2001, plaintiff was lifting and carrying a door at his home when he again felt the symptoms of a hernia. He was seen again by Dr. Garrett on 7 March 2002, who noted plaintiff had two hernias, both in the same area as his three earlier hernias, with one hernia on the left side of his midline and the other on the right side of his midline. At the time of the most recent hearing of this case, Dr. Garrett had recommended that plaintiff undergo either a laproscopic operation or a procedure that he called an "Israeli repair." This surgical repair, which would be plaintiff's fifth repair, was pending at the time of the hearing.

Depositions were taken from the three surgeons who repaired the various hernias. Drs. Harris, Hill and Garrett all agreed that a single occurrence of an umbilical hernia predisposes a person to an increased risk of other hernias occurring at the same site. Drs. Hill and Garrett in particular described the mechanisms by which a hernia might recur, both generally and in plaintiff's case. The doctors described a hernia as essentially a tear in connective tissue and possibly muscle tissue as well, and when the hernia is repaired, the torn tissue is rejoined by scar tissue. Scar tissue has less resiliency, elasticity, and tensile strength than normal connective tissue. Therefore, the scar tissue is prone to rupture more easily than ordinary tissue.

Dr. Garrett testified that plaintiff did not have a hernia after the 20 December 1999 hernia repair, nor after the 28 February 2001 hernia repair. Further, Dr. Garrett conceded that just because a person ·

BONDURANT v. ESTES EXPRESS LINES, INC.

[167 N.C. App. 259 (2004)]

had undergone a hernia repair, it did not mean that person would have another hernia. According to Dr. Garrett, some precipitating event would be necessary to cause another hernia.

Dr. Garrett also testified that he knew Dr. Hill and after having reviewed Dr. Hill's note which stated plaintiff could return to work without restrictions following Dr. Hill's hernia repair of February 1998, Dr. Garrett could make the inference that plaintiff did not have a hernia following that surgical repair.

The Full Commission found that in Dr. Garrett's opinion there is a greater than fifty percent chance that all of plaintiff's subsequent hernias in the same area have been due, in part, to the earlier hernias and resulting surgical repairs that weakened the tissue. The Full Commission, however, also found relying on Dr. Garrett's testimony, "[a] hernia is not going to simply recur just by nature of the fact that he had a previous hernia repair."

---

The issues on appeal are whether: (I) the Commission's finding of fact numbers 4 and 10 are supported by competent evidence; and (II) the Commission employed the correct standard to determine the cause of plaintiff's three subsequent hernias.

### Standard of Review

Opinions and awards of the Commission are reviewed to determine whether competent evidence exists to support the Commission's findings of fact, and whether the findings of fact support the Commission's conclusions of law. *See Deese v. Champion Int'l Corp.*, 352 N.C. 109, 114, 530 S.E.2d 549, 552 (2000). If supported by competent evidence, the Commission's findings are binding on appeal even when there exists evidence to support findings to the contrary. *Allen v. Roberts Elec. Contr'rs*, 143 N.C. App. 55, 60, 546 S.E.2d 133, 137 (2001). The Commission's conclusions of law are reviewed *de novo*. *Allen*, 143 N.C. App. at 63, 546 S.E.2d at 139.

I

[1] First, plaintiff argues that the Commission's finding of fact numbers 4 and 10 are not supported by competent evidence in the record.

Specifically, plaintiff challenges the portion of finding of fact number 4 which reads: "While plaintiff's recovery from his second surgery in February 1998 was slow, he ultimately did heal from that surgery[;]" and, the portion of finding of fact number 10 which

BONDURANT v. ESTES EXPRESS LINES, INC.

[167 N.C. App. 259 (2004)]

reads: "Absent some new strain, the hernias were repaired subsequent to the surgery and did not continue after that surgery. The subsequent hernias are new injuries and are not a continuation of the same hernia. Therefore, the Commission finds that the 1996 hernia ended with the recovery from the successful surgery and plaintiff's subsequent hernias are not the direct and natural result of the prior injury or injuries."

The record reveals the following evidence: Dr. Hill repaired plaintiff's 20 August 1996 hernia on 17 February 1998. Dr. Hill noted on 6 May 1998 that plaintiff "[h]as finally healed and is ready to go." Dr. Hill released plaintiff to return to work on 11 May 1998 without restrictions after the hernia repair. Dr. Garrett testified that he knew Dr. Hill and had reviewed Dr. Hill's note, and if Dr. Hill released plaintiff to return to work without restrictions, Dr. Garrett could make the inference that plaintiff did not have a hernia following the February 1998 surgical repair. Plaintiff admitted that his doctors released him to return to full duty work without restrictions after each hernia repair.

Therefore, competent evidence supports the Commission's finding of fact numbers 4 and 10. Moreover, plaintiff failed to assign as error finding of fact number 11 which reads:

The greater weight of the competent evidence establishes that plaintiff sustained a compensable hernia in 1995 that was successfully repaired and he was permitted to return to work without restriction. Also, plaintiff sustained a subsequent, recurrent hernia in 1996 that was successfully repaired in 1998, which did not exist after the repair, and plaintiff was permitted to return to work without restriction. As previously found by the Commission in this case, the 1996 hernia was a new injury, and not a continuation of his 1996 injury.

Finding of fact number 11 reads essentially the same as finding of fact numbers 4 and 10, which plaintiff assigned as error. As plaintiff failed to assign as error finding of fact number 11, this finding of fact is binding on appeal. *Robertson v. Hagood Homes, Inc.*, 160 N.C. App. 137, 140, 584 S.E.2d 871, 873 (2003). Accordingly, this assignment of error is overruled.

II

[2] Second, plaintiff argues that the Commission failed to utilize the proper standard for determining causation when the Commission

BONDURANT v. ESTES EXPRESS LINES, INC.

[167 N.C. App. 259 (2004)]

concluded that plaintiff's three hernias, sustained after leaving defendant's employ, were not compensable as natural and direct results of earlier compensable hernias sustained by plaintiff while employed by defendant.

The threefold conditions precedent to the right to compensation pursuant to the Workers' Compensation Act are that: (1) the claimant suffered a personal injury by accident; (2) such injury arose in the course of the employment; and (3) such injury arose out of the employment. *Barham v. Food World, Inc.*, 300 N.C. 329, 332, 266 S.E.2d 676, 678 (1980). The social policy behind the Workers' Compensation Act seeks to provide employees swift and certain compensation for the loss of earning capacity from accident or occupational disease arising in the course of employment; and to insure limited liability for employers. "Although the Act should be liberally construed to effectuate its intent, the courts cannot judicially expand the employer's liability beyond the statutory parameters." *Hendrix v. Linn-Corriher Corp.*, 317 N.C. 179, 190, 345 S.E.2d 374, 381 (1986).

N.C. Gen. Stat. § 97-2(18), provides in pertinent part:

In all claims for compensation for hernia or rupture, resulting from injury by accident arising out of and in the course of the employee's employment, it must be definitely proven to the satisfaction of the Industrial Commission:

a. That there was an injury resulting in hernia or rupture.

b. That the hernia or rupture appeared suddenly.

c. Repealed by Session Laws 1987, c. 729, s. 2.

d. That the hernia or rupture immediately followed an accident. Provided, however, a hernia shall be compensable under this Article if it arises out of and in the course of the employment and is the direct result of a specific traumatic incident of the work assigned.

e. That the hernia or rupture did not exist prior to the accident for which compensation is claimed.

All hernia or rupture, inguinal, femoral or otherwise, so proven to be the result of an injury by accident arising out of and in the course of employment, shall be treated in a surgical manner by a radical operation. If death results from such operation, the death shall be considered as a result of the injury, and com-

pensation paid in accordance with the provisions of G.S. 97-38. In nonfatal cases, if it is shown by special examination, as provided in G.S. 97-27, that the injured employee has a disability resulting after the operation, compensation for such disability shall be paid in accordance with the provisions of this Article.

N.C.G.S. § 97-2(18) (2003). To establish a *prima facie* case for compensation for a hernia pursuant to the Act, a claimant must prove: "(1) an injury resulting in a hernia or rupture, (2) which appeared suddenly, (3) immediately following a work-related accident, and (4) did not exist prior to the accident." *Pernell v. Piedmont Circuits*, 104 N.C. App. 289, 292, 409 S.E.2d 618, 619 (1991).

The evidence reveals that plaintiff did not work for defendant after February 1998; therefore, plaintiff's subsequent hernia could not have arisen immediately following a work-related accident or specific traumatic incident of the work assigned by defendant. Moreover, following the 20 December 1999 hernia repair, Dr. Garrett testified that plaintiff did not have a hernia. Additionally, Dr. Garrett testified that plaintiff did not have a hernia after the 28 February 2001 repair.

Plaintiff concedes in his brief that his subsequent hernias do not meet the standards as delineated pursuant to N.C. Gen. Stat. § 97-2(18). Plaintiff instead advances the argument that compensability of the subsequent hernias are governed by *Heatherly v. Montgomery Components, Inc.*, 71 N.C. App. 377, 323 S.E.2d 29 (1984).

In *Heatherly*, this Court stated:

The law in this state is that the aggravation of an injury or a distinct new injury is compensable "[w]hen the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury arises out of the employment, unless it is the result of an independent intervening cause attributable to claimant's own intentional conduct."

*Heatherly*, 71 N.C. App. at 379, 323 S.E.2d at 30 (citation omitted). Even if this Court were to conclude that *Heatherly* controls, plaintiff's argument nevertheless fails as both Drs. Hill and Garrett testified that just because a person has undergone a hernia repair, it does not necessarily follow that the person will have another hernia. Therefore, plaintiff cannot show that the subsequent hernias were the natural and direct result of the earlier hernias.

Moreover, *Heatherly* involved a leg fracture that had not completely healed when the claimant was involved in a motor vehicle accident. The compensability of a leg fracture is not governed by the statutory test as enumerated in N.C. Gen. Stat. § 97-2(18).

Plaintiff testified that the third hernia occurred due to being hit by a wave at the beach, and the last two hernias occurred while carrying a door down a set of steps at his home. In addition, subsequent to his employment with defendant, plaintiff was employed in several positions with various employers that involved heavy manual labor.

No competent evidence supports plaintiff's contention that the three subsequent hernias were caused by incidents related to his employment with defendant. Moreover, plaintiff failed to assign as error conclusion of law number 2 which reads in pertinent part: "Plaintiff's 1995 and 1996 hernias had resolved and plaintiff did not have a hernia prior to his injuries in 1999, 2000, and 2001." Accordingly, this assignment of error is overruled.

The opinion and award of the Full Commission is affirmed.

Affirmed.

Judges TYSON and LEVINSON concur.