***********
The Full Commission has reviewed the Opinion and Award based upon the record of the proceedings before Deputy Commissioner Rideout and the briefs and arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, *Page 2 
receive further evidence or rehear the parties or their representatives. The Full Commission AFFIRMS the Opinion and Award of the Deputy Commissioner.
 *********** JOINT MOTION TO RECEIVE ADDITIONAL EVIDENCE
Plaintiff and defendants System Solutions of Kentucky and Praetorian Insurance Company, and AmFed National Insurance Company who provided workers' compensation insurance coverage to Stanley Thorne d/b/a Southern Conveyor Installation and moved, pursuant to Rule 701(6) of the Workers' Compensation Rules of the North Carolina Industrial Commission for an Order allowing the inclusion of certain additional medical records prepared following Plaintiff's May 11, 2009 evaluation by Dr. Richard Douglas Goldner, on the grounds that such records will be relevant and material to the issues pending before the Full Commission. After consideration of the written and the oral arguments of the parties, the Motion is hereby GRANTED. Accordingly, the medical records prepared following Plaintiff's May 11, 2009 evaluation by Dr. Richard Douglas Goldner shall be attached to the end of the transcript after page 206.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties at the hearing before the Deputy Commissioner as
 STIPULATIONS
1. On 11 October 2007, plaintiff and defendant Stanley Thorne d/b/a Southern Conveyor Installation were subject to and bound by the provisions of the North Carolina Workers' Compensation Act. The defendant System Solutions of Kentucky, Inc. contends that it did not have any employees within the State of North Carolina on October 11, 2007. *Page 3 
2. AmFed, the workers' compensation insurance carrier for Southern Conveyor Installation d/b/a Stanley Thorne, denies that the policy it issued to Southern Conveyor Installation d/b/a Stanley Thorne provided coverage to plaintiff.
3. On 11 October 2007, Southern Conveyor Installation was a "subcontractor" of System Solutions of Kentucky, a "principal" or "intermediate contractor" within the meaning of N.C. Gen. Stat. § 97-19. Praetorian Insurance Company c/o Midwestern Insurance Alliance is the workers' compensation insurance carrier on the risk for System Solutions of Kentucky, Inc.
4. None of the defendants has admitted that plaintiff sustained an injury by accident arising out of and in the course of his employment with Southern Conveyor Installation on 11 October 2007. None of the defendants has admitted that plaintiff was employed by Southern Conveyor Installation on 11 October 2007.
5. Plaintiff last worked for Southern Conveyor Installation on 11 October 2007.
6. Plaintiff's average weekly wage is $868.63 ($8,190.00 divided by 9.4286 weeks), subject to verification by a properly completed Form 22 Wage Chart.
7. Plaintiff returned to work for Kroger on or about 16 December 2007. Plaintiff's average weekly wage in his employment with Kroger should be calculated by the Industrial Commission based upon plaintiff's payroll records.
8. Southern Conveyor Installation has neither admitted nor denied liability for plaintiff's injury. System Solutions of Kentucky, Inc. has denied liability for plaintiff's injury. Defendants have paid plaintiff no medical or disability compensation.
9. The following documentary exhibits, attached hereto, are stipulated into evidence by the parties:
 (a) All Industrial Commission forms. *Page 4 
 (b) All of plaintiff's medical records.
 (c) All of the plaintiff's medical bills.
 (d) Letter dated 19 December 2007 from W. Shan Thompson, attorney for AmFed National Insurance Company, an Accord first report of injury, a Notice of Controversion and a copy of the workers' compensation insurance policy issued by AmFed National Insurance Company to Stanley Thorne D/B/A Southern Conveyor Installation.
 (e) Plaintiff's wage records from Southern Conveyor Installation and Kroger.
 (f) Said defendants' verified discovery responses.
 (g) The contract between Southern Conveyor Installation and System Solutions of Kentucky, Inc.
 (h) Proof of insurance form of Southern Conveyor Installation.
 (i) Letter dated January 29, 2008 from Neal H. Labovitz, attorney for Stanley Thorne d/b/a Southern Conveyor Installers.
 (j) Policy binder between Stanley Thorne and AmFed National Insurance Co., etc.
 ***********
Based upon the competent evidence of record herein, the Full Commission makes the following additional
 FINDINGS OF FACT
1. Defendants Stanley Thorne and Southern Conveyor Installation received notice or refused to receive notice of the hearing in this claim and elected not to appear or otherwise present any defense to plaintiff's claim for disability and medical compensation. *Page 5 
2. Stanley Thorne d/b/a Southern Conveyor Installation (hereinafter Thorne) contracted with System Solutions of Kentucky (hereinafter SSK) to perform conveyor installation work at the new FedEx Ground facility in Research Triangle Park. SSK sublet the contract to Thorne on 5 January 2007. The work on the project commenced in April 2007.
3. At the time SSK and Thorne entered the contract, SSK did not require Thorne to produce a certificate of workers' compensation insurance covering Thorne's employees assigned to the FedEx Ground Project. Subsequently, (and after plaintiff's injury), SSK obtained a certificate of insurance from Thorne that was issued on 30 October 2007.
4. The certificate of insurance did not state that Thorne had complied with N.C. Gen. Stat. § 97-93. The certificate did not state that Thorne possessed a policy of workers' compensation covering his employees in North Carolina. Likewise, the certificate made no reference to insuring employees assigned to the FedEx Ground project.
5. The certificate of insurance was not issued by an insurance carrier or the Department of Insurance.
6. The policy of workers' compensation insurance for which the certificate of insurance was issued, did not cover plaintiff or any other employee of Thorne in North Carolina. The policy did not comply with N.C. Gen. Stat. § 97-93 and consequently, the certificate obtained by SSK could not have complied with the requirements of N.C. Gen. Stat. § 97-19.
7. SSK was an intermediate contractor. On the date of the injury giving rise to this claim, Praetorian Insurance Company insured SSK for workers' compensation.
8. Plaintiff graduated from high school and subsequently received vocational training to become a welder. Plaintiff is a certified welder. He has worked as an industrial welder and as a welder in the construction fields for approximately 17 years. Plaintiff has never *Page 6 
been self-employed as a welder. In the summer of 2006 plaintiff enrolled in Durham Technical Community College and began a course of study in Industrial Systems Technology.
9. In August 2007, plaintiff responded to a classified advertisement placed by Thorne in which Thorne sought to hire welders. Plaintiff responded to the advertisement and was directed to meet with Mr. David Williams, a supervisor for Thorne. During the initial meeting with plaintiff, Mr. Williams offered plaintiff employment as a welder/fabricator for Thorne. Plaintiff began working for Thorne on 6 August 2007. When he began working for Thorne, plaintiff continued taking classes from Durham Technical Community College.
10. Thorne paid plaintiff $14.00 per hour. Plaintiff was not paid based on the amount of welding he performed. Likewise, he was not paid a set amount for a certain amount of work performed. Plaintiff did not enter a contract with Thorne. Thorne did not ask plaintiff to produce proof of insurance prior to beginning work for Thorne.
11. Thorne set plaintiff's work schedule, which was from 7:00 a.m. to 5:30 p.m. Thorne directed plaintiff what work was to be performed each workday. Thorne supplied all tools plaintiff used in his work. Plaintiff did not own any welding tools or equipment. Thorne did not allow plaintiff to come and go from work as he pleased.
12. On 11 October 2007, Thorne employed plaintiff as a welder/fabricator. On that date, Thorne regularly employed three or more employees in North Carolina. Plaintiff recalled that Thorne had approximately seven employees on the FedEx Ground facility jobsite on 11 October 2007. On that date, Thorne did not possess a policy of workers' compensation insurance that complied with the provisions of N.C. Gen. Stat. § 97-93.
13. On 11 October 2007, plaintiff was performing the work assigned by Thorne. The work involved the use of a 4 inch grinder. Thorne supplied the grinder to plaintiff. Prior to *Page 7 
supplying the grinder to plaintiff, Thorne removed a safety guard from the grinder in order to accommodate a 10 inch grinding wheel. The guard was designed to prevent the operator from being injured if the grinding wheel broke or shattered. A 4 inch grinder is not designed to accommodate a 10 inch grinding wheel.
14. Removal of the safety guard constituted a violation of a safety regulation, 29 CFR 1910.243.
15. Plaintiff began to use the grinder to cut a piece of steel. When plaintiff applied the grinding wheel to the piece of steel, the wheel shattered into pieces. One of the fragments struck plaintiff in the palmar aspect of his left forearm, causing a deep laceration. The fragment of the shattered wheel would not have struck plaintiff's arm if Thorne had not removed the safety guard. Plaintiff's injury constituted an accident arising out of and in the course of his employment.
16. A co-worker transported plaintiff to the Rex Hospital emergency department from where he was referred to Dr. Kimberly Barrie for a surgical consultation. On 12 October 2007, Dr. Barrie performed surgery during which she repaired complete lacerations of the flexor carpi ulnaris, flexor carpi radialis, palmaris longus tendon, flexor digitorum to the index finger, flexor digitorum superficialis to the middle finger, flexor digitorum superficialis to the ring finger and flexor digitorum superficialis to the small finger.
17. Following surgery, Dr. Barrie excused plaintiff from all work for two weeks. She also prescribed a course of occupational therapy in an effort to prevent the repaired tendons from becoming adhered to one another.
18. Plaintiff reported his injury to Thorne within 30 days of the date that it occurred. Plaintiff provided Thorne with his work excuse note for the two weeks following his surgery. *Page 8 
When plaintiff returned to Dr. Barrie for his first post surgical follow-up appointment on 25 October 2007, she restricted him from all use of his left hand and arm. Plaintiff provided the work restriction note to Mr. Williams who responded that he would speak to Thorne and let plaintiff know whether Thorne would provide him with work within his restrictions. Thereafter, neither Thorne nor Mr. Williams contacted plaintiff or offered him any employment. Consequently, plaintiff sought alternative employment.
19. On 14 December 2007, plaintiff returned to work for Kroger as a grocery bagger/stocker. As of the date of the hearing, plaintiff continued to be so employed by Kroger. In addition, he continued taking classes from Durham Technical Community College.
20. Plaintiff returned to Dr. Barrie on 27 December 2007. Dr. Barrie was concerned about the condition of plaintiff's arm because he had missed several occupational therapy appointments. Plaintiff had missed the appointments due to defendants' denial of his claim and his personal inability to pay for the prescribed treatment. Plaintiff continued to have "problems with extension of the wrist", and he had some sharp shooting pain in the left forearm. He also continued to experience a 50% loss of grip strength. Nonetheless, Dr. Barrie's office note stated that plaintiff "should be able to work full duty with regards to his actual activities".
21. On 27 December 2007, Dr. Barrie was unaware that plaintiff had already returned to work for Kroger as a grocery bagger/stocker. Dr. Barrie instructed plaintiff to return to her office as needed and to let her know if he had difficulty at work due to his injury.
22. On 7 January 2008, plaintiff telephoned Dr. Barrie and informed her office that he was continuing to have problems as a result of his injury. Therefore, Dr. Barrie ordered a Functional Capacity Evaluation (FCE). An FCE is an objective method for determining an individual's physical abilities. Plaintiff has not undergone an FCE due the denial of his claim *Page 9 
and his personal inability to pay for the evaluation.
23. As of the date of the hearing before the Deputy Commissioner, plaintiff continued to experience pain at the site of the laceration and surgery. He also continued to experience a loss of grip strength. Occasionally, he experienced numbness in his fingertips. When plaintiff made a fist with his left hand, the Deputy Commissioner observed that there appeared to be an abnormal bulging of the tissue at the site of his laceration and surgery. In addition, the skin at the laceration/surgical site pulled, as though it was adhering to some subcutaneous tissue. Plaintiff wore a band similar to an Ace bandage over the site of his injury in an effort to minimize swelling. As of the date of the before the Deputy Commissioner, plaintiff was incapable of performing the duties of a welder.
24. Plaintiff will benefit from re-evaluation of his injury by a physician of his choice.
25. Plaintiff worked for Thorne from 6 August 2007 through 11 October 2007, a period of 9.4286 weeks. During this period of time, plaintiff earned wages totaling $8,190.00. Computing plaintiff's average weekly wage using method three, dividing the earnings by the number of weeks worked or parts thereof, would produce a result that is fair and just to all parties. Thus, plaintiff's average weekly wage is $868.63, which yields a compensation rate of $579.16. From 14 December 2007 through 2 April 2008, a period of 15.7143 weeks, plaintiff earned wages from Kroger totaling $5,202.73. Plaintiff's average weekly wage at Kroger was $331.08, or $537.55 less than his average weekly wage while employed by Thorne.
26. Since 11 October 2007, plaintiff has not been self-employed. Likewise, he has not worked for or earned wages from any employer other than Kroger.
27. As a result of his injury on 11 October 2007, plaintiff was incapable of earning wages from any employer from 12 October 2007 through 13 December 2007. As a result of his *Page 10 
injury, plaintiff's earning capacity was reduced by $537.55 per week from 14 December 2007 through 2 April 2008. From 3 April and continuing through the date of the hearing, plaintiff's earning capacity was reduced as a result of his injury.
28. The medical treatment plaintiff received from Rex Hospital, Dr. Barrie, Triangle Orthopedic Associates and North Carolina Specialty Hospital was reasonably necessary to effect a cure or provide relief for plaintiff's injury. Plaintiff should undergo an FCE as recommended by Dr. Barrie for further evaluation of his injury and the extent of his physical limitations.
29. There is no evidence that plaintiff has reached maximum medical improvement.
30. Thorne, SSK and Praetorian defended plaintiff's claim without any reasonable basis. Thorne presented no evidence. All of plaintiff's evidence established the compensability of and Thorne's liability for his injury. SSK and Praetorian had no reasonable basis to defend plaintiff's claim that he was employed by Thorne, that he sustained a compensable injury by accident on 11 October 2007 and that he was entitled to disability and medical compensation as a result thereof. Likewise, SSK and Praetorian asserted the provisions of N.C. Gen. Stat. § 97-19 in defense of plaintiff's claim. However, neither SSK nor Praetorian offered any evidence that the certificate of insurance stated that Thorne had complied with N.C. Gen. Stat. § 97-93, that the certificate of insurance was issued by a carrier or the Department of Insurance or that SSK obtained the certificate at the time it sublet the contract to Thorne. To the contrary, the certificate was not even issued until after the date of plaintiff's injury. SSK sublet the contract and permitted Thorne to perform work pursuant to the contract before requiring Thorne to produce a certificate. The certificate, on its face, does not meet the requirements of N.C. Gen. Stat. § 97-19, as would be expected when the policy for which it was issued does not meet the requirements of N.C. Gen. Stat. § 97-93. These facts alone illustrate the absence of a reasonable *Page 11 
defense by SSK and Praetorian.
31. Thorne is a business located in Mississippi. Thorne has refused or neglected to appear or otherwise participate in these proceedings. There is no evidence that Thorne owns any assets in this state. Likewise, there is no evidence that he continues to do business in this state. Based upon his application for insurance in Mississippi, it appears that Thorne is not only financially irresponsible, but unscrupulous and dishonest as well. In this application for insurance, Thorne made false and misleading statements about his business and the number of persons he employed.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On 11 October 2007, Thorne regularly employed three or more persons in North Carolina. N.C. Gen. Stat. § 97-2(1).
2. On 11 October 2007, plaintiff was an employee of Thorne. N.C. Gen. Stat. § 97-2(2).
3. On 11 October 2007, plaintiff sustained an injury by accident arising out of and in the course of his employment with Thorne. N.C. Gen. Stat. § 97-2(6).
4. SSK failed to comply with N.C. Gen. Stat. § 97-19 and is therefore liable to plaintiff for all disability and medical compensation due as a result of his injury on 11 October 2007. N.C. Gen. Stat. § 97-19.
5. Plaintiff's injury was caused by Thorne's willful failure to comply with a statutory requirement, to wit: 29 CFR 1910.243. Therefore, plaintiff is entitled to a 10% increase *Page 12 
in the amount of compensation awarded herein. N.C. Gen. Stat. § 97-12.
6. As a result of his injury on 11 October 2007, plaintiff is entitled to temporary total disability compensation at the rate of $579.16 per week beginning on 12 October 2007 and continuing through 13 December 2007. N.C. Gen. Stat. § 97-29. Pursuant to N.C. Gen. Stat. § 97-12, the weekly sum due to plaintiff under this paragraph shall be increased by 10% to $637.08 per week.
7. As a result of his injury on 11 October 2007, plaintiff is entitled to partial disability compensation at the rate of $358.38 per week from 14 December 2007 through 2 April 2008. N.C. Gen. Stat. § 97-30. Pursuant to N.C. Gen. Stat. § 97-12, the weekly sum due to plaintiff under this paragraph shall be increased by 10% to $394.21 per week.
8. As a result of his injury on 11 October 2007, plaintiff is entitled to partial disability compensation at the rate of .6667 percent of the difference between $868.63 and his weekly earnings from 3 April 2008 and continuing for up to 300 weeks from the date of his injury. N.C. Gen. Stat. § 97-30. Pursuant to N.C. Gen. Stat. § 97-12, the weekly sums due to plaintiff under this paragraph shall be increased by 10%.
9. Plaintiff is entitled to payment of all past and future medical expenses incurred for treatment of his 11 October 2007, including treatment provided by Rex Hospital, Triangle Orthopedic Associates, Dr. Barrie and North Carolina Specialty Hospital. N.C. Gen. Stat. §§ 97-25;97-25.1.
10. Plaintiff is entitled to an evaluation and treatment by a physician of his choice. N.C. Gen. Stat. §§ 97-25; 97-27.
11. For Thorne's, SSK's and Praetorian's unreasonable defense of his claim, plaintiff is entitled to an award of attorney's fees. N.C. Gen. Stat. § 97-88.1. *Page 13 
12. The manifest purpose of N.C. Gen. Stat. § 97-19 is to bring specific categories of persons within the coverage of the Act for the purpose of protecting them from "financially irresponsible subcontractors who do not carry workmen's compensation insurance, and to prevent principal contractors, intermediate contractors, and sub-contractors from relieving themselves of liability under the Act by doing through sub-contractors what they would otherwise do through the agency of direct employees." Withers v. Black, 230 N.C. 428, 53 S.E.2d 668 (1949);Green v. Spivey, 236 N.C. 435, 73 S.E.2d 488 (1952); see also Larson TheLaw of Workmen's Compensation, vol. 1C § 49.00 et seq.
13. N.C. Gen. Stat. § 97-19 provides that the Commission must "fix the order in which said parties shall be exhausted, beginning with the immediate employer." [emphasis added] Nowhere does the Act or interpreting case law define the phrase "parties shall be exhausted" as used in N.C. Gen. Stat. § 97-19. However, it is well established that the overreaching purpose and social policy for our Workers' Compensation Act is to provide employees swift and certain compensation for the loss of earning capacity from accident arising in the course of employment and to insure limited liability for employers. Bondurant v. EstesExpress Lines, Inc., 167 N.C. App. 259, 606 S.E.2d 345 (2004). N.C. Gen. Stat. § 97-19 does not state that the injured employer is required to exhaust his "remedies". Rather, he is only required to exhaust the "parties". To interpret the phrase "parties shall be exhausted" as requiring the employee to exhaust his remedies would be contrary to the purposes of the Act. Such an interpretation would require plaintiff to convert this Opinion and Award to a judgment, transfer the judgment to Mississippi where the uninsured employer presumably may own some assets, and execute on the judgment in hope of obtaining some payment on the Award. Such an interpretation would defeat the fundamental purpose of the Workers' Compensation Act: to provide injured employees swift *Page 14 
and certain compensation.
14. In this case, the intermediate contractor did not comply with N.C. Gen. Stat. § 97-19 (which the Legislature enacted to protect employees who are injured while working for an employer without workers' compensation insurance). If SSK satisfies the Commission's award, SSK will have the right to recover from Thorne all amounts of medical and disability compensation it pays plaintiff. N.C. Gen. Stat. § 97-19. It is logical and equitable that the intermediate contractor who failed to comply with N.C. Gen. Stat. § 97-19 and thereby sublet a contract to a financially irresponsible subcontractor, should bear the burden and expense of obtaining payment from the subcontractor, not the injured employee who lacks the resources and means of the intermediate contractor. The Full Commission therefore concludes that the Legislature must have intended for the phrase "and said Commission, in its award, shall fix the order in which said parties shall be exhausted" to mean that the Commission is required to fix the order of the parties' liability and that if the primarily liable party (Thorne) does not satisfy the award, the next party (SSK) is immediately liable for payment of the award. Thus, if Thorne does not pay this award within the time permitted by the Act, plaintiff is entitled to enforce the award against SSK and Praetorian, immediately.
15. "Any employer required to secure the payment of compensation who refuses or neglects to secure such compensation shall be punished by a penalty of one dollar ($1.00) for each employee, but not less than fifty dollars ($50.00) nor more than one hundred dollars ($100.00) for each day of such refusal or neglect, and until the same ceases." N.C. Gen. Stat. § 97-94(b) (2008).
16. "Any person who, with the ability and authority to bring an employer in compliance with N.C. Gen. Stat. § 97-93, willfully fails to bring the employer in compliance, *Page 15 
shall be guilty of a Class H felony. Any person who, with the ability and authority to bring an employer in compliance with N.C. Gen. Stat. § 97-93, neglects to bring the employer in compliance, shall be guilty of a Class 1 misdemeanor. Any person who violates this subsection may be assessed a civil penalty by the Commission in an amount up to one hundred percent (100%) of the amount of any compensation due the employers' employees injured during the time the employer failed to comply with N.C. Gen. Stat. § 97-93." N.C. Gen. Stat. § 97-94(d) (2008).
 ***********
Based upon the foregoing stipulations, findings of facts and conclusions of law, the Full Commission enters the following:
 AWARD
1 Defendants Thorne, SSK and Praetorian shall pay plaintiff temporary total disability compensation at the rate of $637.08 per week beginning on 12 October 2007 and continuing through 13 December 2007. This amount shall be paid directly to plaintiff in a lump sum.
2. Defendants Thorne, SSK and Praetorian shall pay plaintiff partial disability compensation at the rate of $394.21 per week from 14 December 2007 through 2 April 2008. This amount shall be paid directly to plaintiff in a lump sum.
3. Defendants Thorne, SSK and Praetorian shall pay plaintiff partial disability compensation at the rate of .6667% of the difference between $868.63 and his weekly beginning 3 April 2008 and continuing for up to 300 weeks from the date of his injury. The weekly sums due plaintiff under this paragraph shall be increased by 10% pursuant to N.C. Gen. Stat. § 97-12.
4. Defendants Thorne, SSK and Praetorian shall pay all past and future medical *Page 16 
expenses incurred for treatment of his 11 October 2007 injury, including future evaluations and treatment by a physician selected by plaintiff.
5. A reasonable attorney's fee of twenty-five percent of the compensation due plaintiff in paragraphs 1, 2 and 3, including the 10% increase, is approved for plaintiff's counsel and shall be paid as follows: 25% of the sums due plaintiff in paragraphs 1, 2 and 3 shall be paid directly to plaintiff's counsel as an attorney's fee. This attorney's fee shall not be deducted from the sums due to plaintiff in paragraphs 1, 2 and 3.
6. The expert witness fee approved by the Deputy Commissioner for Dr. Kimberly Barrie in the amount of $750.00 shall be paid by defendants Thorne, SSK and Praetorian.
7. Defendants Thorne, SSK and Praetorian shall pay the costs, including plaintiff's costs.
 ORDER
IT IS FURTHER ORDERED:
1. Pursuant to N.C. Gen. Stat. § 97-19, plaintiff shall exhaust the parties in the following order: Plaintiff shall first exhaust Stanley Thorne. Second, plaintiff shall exhaust System Solutions of Kentucky (Praetorian Insurance Company).
2. Stanley Thorne shall be deemed exhausted within the meaning of N.C. Gen. Stat. § 97-19 if he does not pay the Award herein, in full, within the time permitted by N.C. Gen. Stat. § 97-18(e) (40 days).
3. If Stanley Thorne does not satisfy this Award within the time permitted by N.C. Gen. Stat. § 97-18(e) (40 days from the date of this Award), plaintiff will have exhausted Defendant-Employer Thorne within the meaning of N.C. Gen. Stat. § 97-19 and will be entitled *Page 17 
to immediate payment of the entire Award from System Solutions of Kentucky and Praetorian Insurance Company.
4. Pursuant to N.C. Gen. Stat. § 97-94(b), a civil penalty is hereby assessed against Defendant-Employer Thorne for failure to maintain workers' compensation insurance coverage on its employees in the State of North Carolina on and before October 11, 2007. Thorne shall make a check payable to the North Carolina Industrial Commission in the amount of $50.00 per day from 30 April 2007 through 11 October 2007 and send it to Assistant Attorney General Tracy C. Curtner at the office of the North Carolina Industrial Commission Fraud Section.
5. Pursuant to N.C. Gen. Stat. § 97-94(d), an additional penalty of 100 percent of the amount of compensation due to plaintiff in this Award is assessed against Stanley Thorne for failing to comply with N.C. Gen. Stat. § 97-93. Stanley Thorne shall contact Assistant Attorney General Tracy C. Curtner at the office of the North Carolina Industrial Commission Fraud Section to determine the current amount due.
S/__________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/__________ PAMELA T. YOUNG CHAIR PGPage 18
 S/__________ DIANNE C. SELLERS COMMISSIONER