***********
Upon review of the competent evidence of record, with reference to the errors assigned, and considering the briefs and oral arguments of the parties, the Full Commission finds no good grounds to receive further evidence, or to rehear the parties or their representatives. Upon reconsideration of the evidence, the Full Commission affirms, with modifications, the Opinion and Award of the Deputy Commissioner, and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which the parties entered into at the hearing as:
 STIPULATIONS *Page 2 
1. Plaintiff's average weekly wage was $804.04 at all times relevant to these proceedings, yielding a compensation rate of $536.05.
2. The parties stipulated to the following documents being admitted into evidence as stipulated exhibits:
 a. Stipulated Exhibit One: North Carolina Industrial Commission forms and filings;
 b. Stipulated Exhibit Two: Plaintiff's medical records;
 c. Stipulated Exhibit Three: Plaintiff's discovery responses;
 d. Stipulated Exhibit Four: Transcript of Plaintiff's recorded statement.
 *********** ISSUES
The issue to be determined is whether Plaintiff sustained a compensable hernia, and if so, to what workers' compensation benefits is he entitled?
 ***********
Based upon the competent and credible evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. The parties are subject to the North Carolina Workers' Compensation Act, Defendant-Employer having employed three or more employees at all times relevant to these proceedings.
2. An employment relationship existed between the parties at all times relevant to these proceedings. *Page 3 
3. Defendant-Carrier provided workers' compensation insurance coverage for Defendant-Employer at all times relevant to these proceedings.
4. Plaintiff is 61 years old, with a date of birth of March 14, 1949. Plaintiff is a high school graduate and served in the United States Marine Corps for approximately four years with an honorable discharge in 1971. Prior to working with Defendant-Employer, Plaintiff was a railroad worker, a mechanic, and a truck driver. Since February 2002, Plaintiff has been working for Defendant-Employer as a local truck driver.
5. Sometime in 2002 or 2003, Plaintiff was lifting a couch at his home when he felt a burning and stinging sensation in his right groin. Shortly thereafter, he felt a bulge in his right groin. Plaintiff waited a long period of time before seeking medical treatment following this incident.
6. On December 15, 2006, Plaintiff first presented to Dr. Amos Darrell Tackett, a general surgeon, complaining of a right groin bulge that began while lifting a couch at home. The bulge was still present. Plaintiff also reported that he had pain with daily activities, that he could not push the bulge back into a normal anatomic position, and that the bulge had become larger and more painful over the previous two years. Dr. Tackett diagnosed a large, non-reducible (meaning that it could not be pushed completely back into normal anatomic position) inguinal hernia on the right.
7. On May 22, 2007, Dr. Tackett performed an open surgical repair of Plaintiff's right inguinal hernia. Plaintiff remained out of work until July 2007. Plaintiff worked without any problem with his right groin from July 2007 through November 27, 2007.
8. On November 27, 2007, Plaintiff was at work re-fueling his truck at Defendant-Employer's fuel pump in preparation for the following day when his feet became tangled in the *Page 4 
fuel hose and he lost his balance and fell. Plaintiff's right foot shot out from under him due to the slickness of the diesel fuel that covered a metal platform next to the pump, so he grabbed a hook on the fuel tank in an attempt to catch himself as he fell to his knees. As Plaintiff was falling, he felt a burning and stinging sensation in his right groin. Later that same day, Plaintiff noticed a lump in his right groin. Plaintiff reported this incident to his supervisor, Mr. Tommy Neal Shepherd, before leaving work on November 27, 2007, and received a Form 18 notice of accident from Mr. Shepherd; however, Plaintiff did not complete the Form 18 until December 17, 2008.
9. On November 28, 2007, Plaintiff returned to Dr. Tackett and reported that he "strained" his right groin the previous evening at work when he slipped and grabbed a handle while re-fueling his truck. Plaintiff further reported swelling in his right groin. Dr. Tackett's physical examination of Plaintiff revealed the presence of a reducible right inguinal hernia. Dr. Tackett diagnosed Plaintiff with "inguinal hernia, unilateral recurrent," and scheduled him to return for a follow-up office visit in January 2008 to schedule a repair of the hernia. Plaintiff did not return to Dr. Tackett as scheduled, and did not seek treatment for his right inguinal hernia for nearly a year. Plaintiff continued to work as a truck-driver without any acute incident or complaints concerning his right inguinal hernia until November 24, 2008.
10. During the time between November 2007 and November 2008, the lump in Plaintiff's right groin increased in size. On the evening of November 23, 2008, while at home, Plaintiff experienced some minor pain in his right groin area while loading some firewood. However, Plaintiff's right groin pain subsided by the following morning.
11. On the morning of November 24, 2008, Plaintiff was working for Defendant-Employer inspecting his truck when he felt intense pain in his right groin. Plaintiff returned to *Page 5 
Dr. Tackett on the same day and reported pain with daily activities and a right groin bulge which was partially reducible with application of direct pressure and by lying down. Dr. Tackett scheduled Plaintiff for surgery.
12. On November 25, 2008, Dr. Tackett performed a surgical repair of Plaintiff's right inguinal hernia with placement of a Kugel patch. Dr. Tackett noted that the medial portion of the Prolene mesh placed in the May 2007 surgery became torn from its attachment to the surrounding tissue. Dr. Tackett also noted that the hernia was now non-reducible and much more painful than what Plaintiff reported to him the previous day at his office visit.
13. Following Plaintiff's November 25, 2008 surgery, Dr. Tackett restricted him to no lifting greater than 10 pounds for eight weeks. Plaintiff developed an incisional infection while recovering from surgery, for which Dr. Tackett prescribed Keflex. On January 16, 2009, Plaintiff returned to work full-duty with Defendant-Employer in his truck-driving position.
14. In Dr. Tackett's responses to the written questions submitted by the Deputy Commissioner, he opined that "[t]he hernia identified on November 28, 2007 was a `new' hernia (that is, a recurrence of the previously repaired hernia). I believe that it developed on Nov. 27, 2007 with (Plaintiff's) episode of slipping." Dr. Tackett further opined, and the Full Commission finds as fact, that the sudden trauma to Plaintiff's right groin tissue at the time of his November 27, 2007 fall at work "probably tore the previously placed mesh away from its attachment to the tissue." Dr. Tackett was also of the opinion that Plaintiff's November 27, 2007 fall at work more likely than not caused the hernia that he diagnosed on November 28, 2007, and more likely than not appeared suddenly and immediately following said fall at work.
15. The Full Commission finds, based upon the greater weight of the evidence, that on November 27, 2007, Plaintiff sustained a compensable injury by accident arising out of and in *Page 6 
the course and scope of his employment with Defendant-Employer when he got his foot tangled on a hose, slipped in diesel fuel, grabbed a hook, and fell to his knees while re-fueling his truck, causing the Prolene mesh placed during the May 2007 hernia repair surgery to be torn away from its attachment to the surrounding tissue. Plaintiff's slip and fall incident also caused a "new" or recurrent hernia at the site of the previously repaired hernia. Plaintiff's slip and fall incident resulted in the need for additional surgery.
16. As a result of Plaintiff's fall, which caused the need for additional surgery, Plaintiff was incapable of working from November 25, 2008 through January 15, 2009. The Deputy Commissioner asked Dr. Tackett whether he restricted Plaintiff from working following his November 25, 2008 surgery, and whether Plaintiff could perform his duties as a full-time truck driver for Defendant-Employer from that date through January 15, 2009. In response, Dr. Tackett indicated that for a recurrent hernia, "restrictions would be. . . for 8 weeks."
17. The treatment Plaintiff received from Dr. Tackett was reasonably required to effect a cure, to give relief, and/or to lessen his period of disability with respect to the right inguinal hernia that he developed on November 27, 2007.
18. Plaintiff is entitled to temporary total disability compensation from November 25, 2008 through January 15, 2009 at the rate of $536.05 per week.
19. With respect to Defendants' claim for a 10 percent reduction in Plaintiff's temporary total disability compensation pursuant to N.C. Gen. Stat. §§ 97-12(3), the Full Commission finds, based upon the greater weight of the evidence, that Defendants failed to meet their burden of proving that Plaintiff's one year delay in seeking treatment for his November 27, 2007 work injury resulted in a greater period of post-surgical disability and/or additional treatment costs. Plaintiff's delay in seeking surgery did not prejudice Defendants. *Page 7 
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. An employment relationship existed between the parties at all times relevant to these proceedings. N.C. Gen. Stat. § 97-2(1).
2. On November 27, 2007, Plaintiff sustained a compensable injury by accident arising out of and in the course of his employment with Defendant-Employer when he slipped and fell to his knees while re-fueling his truck as more fully described above, causing the Prolene mesh placed during his May 2007 hernia repair surgery to be torn away from its attachment to the surrounding tissue, aggravating the previously repaired hernia site. N.C. Gen. Stat. § 97-2(6);Goforth v. K-Mart Corp,167 N.C. App. 618, 605 S.E.2d 709 (2004). Plaintiff's slip and fall incident also caused a compensable "new" or recurrent hernia, which appeared suddenly and immediately following the fall and otherwise meets the requirements of N.C. Gen. Stat. § 97-2(18);Bondurant v. Estes Express Lines, Inc.167 N.C. App. 259, 606 S.E.2d 345 (2004).
3. Plaintiff's compensable injury by accident caused the need for the surgery on November 25, 2008. The treatment Plaintiff received from Dr. Amos Darrell Tackett with respect to his November 27, 2007 work injury was reasonably necessary in order to effect a cure, to give relief, and/or to lessen his period of disability, and Defendants are obligated to pay for such treatment. N.C. Gen. Stat. §§ 97-2(19), 97-25, 97-25.1.
4. Plaintiff's November 27, 2007 work injury rendered him medically disabled from any employment from November 25, 2008 through January 15, 2009. Thus, Plaintiff satisfied prong one of Russell v. Lowes Prod. Distribution, and is entitled to receive temporary total *Page 8 
disability compensation for that period. N.C. Gen. Stat. § 97-29; Russell v. Lowes Prod.Distribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993).
5. Plaintiff's one year delay in seeking treatment for his November 27, 2007 work injury did not result in a greater period of post-surgical disability and/or additional treatment costs. Plaintiff's delay in seeking surgery did not prejudice Defendants, and Defendants are not entitled to a 10 percent reduction in Plaintiff's temporary total disability compensation. N.C. Gen. Stat. §§ 97-12(3), 97-22.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission makes the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, Defendants shall pay temporary total disability compensation to Plaintiff at the rate of $536.05 from November 25, 2008 through January 15, 2009. The accrued compensation shall be paid in a lump sum.
2. Defendants shall pay all medical expenses incurred as a result of Plaintiff's November 27, 2007 work injury, including the treatment provided by Dr. Amos Darrell Tackett, for so long as such evaluations, examinations, and treatments may reasonably be required to effect a cure, to give relief, and/or to lessen his period of disability, in accordance with the provisions of the North Carolina Workers' Compensation Act.
3. A reasonable attorney's fee of 25 percent of the compensation due Plaintiff under paragraph one is approved for Plaintiff's counsel. Defendants shall deduct and pay directly to Plaintiff's counsel 25 percent of the accrued compensation owed to Plaintiff.
4. Defendants shall pay the costs of these proceedings. *Page 9 
This the 26th day of August 2010.
 S/___________________
 BERNADINE S. BALLANCE
 COMMISSIONER
CONCURRING:
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1